# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF PUERTO RICO

| IN RE: | CASE NO. 10-08677 (BKT) |
|---|---|
| LUIS F. LOPEZ ROSADO | CHAPTER 13 |
| DEBTOR | |

## MOTION IN OBJECTION TO DEBTOR'S PLAN CONFIRMATION AND MOTION TO DISMISS

**TO THE HONORABLE COURT:**

**COMES NOW,** creditor **MIGNA SALGADO OJEDA** represented by the undersigned counsel and very respectfully states and prays:

1. On November 18, 2010, the Honorable Court did not confirmed debtor's plan dated October 24, 2010; and set the confirmation hearing for March 24, 2011, any Objection to Confirmation of the Plan must be filed not later than ten (10) days prior such hearing as per P.R. Local Rule 3015-2(e)(1). (Docket No. 23)

2. Then on February 10, 2011, the Honorable Court rescheduled debtor's confirmation hearing to March 16, 2011. (Docket No. 42)

3. Pursuant to Local Rule 3015-2 (e) (1), creditor Salgado Ojeda, from now on referred as Creditor, files the present motion objecting debtor's plan confirmation based on Sections 1325 (a) (3) and 1325 (a) (8), 11 U.S.C. 1325 (a) (3) and 1325 (a) (8), and moves for the case dismissal as per Section 1307 (c) (11), as discussed below.

4. This Honorable Court should know and consider certain relevant prepetition state judicial proceedings and history to get a sense of Debtor's intentions and motives to file this petition.

1

5. In the year 2006, Creditor filed a petition to divorce the debtor Luis López Rosado her husband for 19 years in state court[1].

6. On June 30, 2008, María Concepción Cestero López, Debtor's cousin and creditor listed in Schedule F with account number 0344, filed a debt collection claim for monies owed in the amount of $45,000, in state court[2]. On February 2, 2009, state court entered default judgment against Debtor in this particular case, and Creditor is still challenging any amount owed to his cousin since she did not have any knowledge of such personal debts or the plaintiff's claims.

7. On August 12, 2008, the marriage was dissolved and the state court established that Debtor shall have the obligation to make monthly child support payments in amount of $800 to his son.

8. In addition, the state court required Debtor to pay for his son's medical insurance coverage, and all expenses, including mortgage payments, utilities and telephone service related to child's homestead located in Urbanización Colinas Metropolitanas, Y-18, Calle El Vigia in Guaynabo, Puerto Rico.

9. Creditor suffers from a number of respiratory and debilitating illnesses that require a substantial amount of prescription drugs and therapies to treat her condition, particularly to prevent her frequent asthma attacks and respiratory complications.

10. On September 15, 2008, state court recognized that all prescription drugs to treat multiple respiratory conditions were covered by Debtor's health insurance plan that he

---

[1] Commonwealth of Puerto Rico's Tribunal of First Instance, Family Relations Courts of Bayamón Judicial Region, Civil Case No. D DI2006-1999, (4005).
[2] Common wealth of Puerto Rico's Tribunal of First Instance, Judicial Region of Bayamón, Guaynabo Court, Civil Case No. D2CD2008-0344 (201).

was already paying, and ordered Debtor to make monthly alimony payments to Creditor in the amount of $250 a month.

11. Interestingly, on December 28, 2010, the state court issued an order stating that prescription drugs were being covered by her medical insurance coverage that **was** being paid by Debtor, in response to Debtor's motion to clarify, if he was obligated to provide Creditor medical insurance and prescription drug coverage as part of her alimony, therefore confirming that Creditor's alimony included medical insurance and prescription drug coverage and must be provided by Debtor.

12. All said payments in the amount of $800 for child support, his son's and ex-spouse health insurance coverage, and monthly alimony payments in the amount of $250 payable to his former spouse, are domestic support obligations (DSO) as defined in 11 U.S.C. Section 101 (14) (A), since they were established and ordered by a state court as a result of a divorce payable to a former spouse and Debtor's child.

13. Creditor was required to be constantly filing motions in state court against Debtor since he refused to make the alimony payments among other domestic support obligations.

14. On September 28, 2009, state court modified Debtor's monthly alimony payment increasing the amount to $365.

15. Debtor refused to comply with state court's multiple orders to pay the established alimony that as of August 2010, alimony payments in arrears amounted to $3,130.00, therefore on August 26, 2010, state court held a hearing to discuss Debtor's contempt with the court's order and his refusal to make alimony payments.

16. As part of said hearing, the state court ordered Debtor to deposit an amount of $1,500.00 as bond to pay any judgment in favor of Creditor, thus, Debtor would be required to pay an additional $1,630.00, if the court ruled in favor of Creditor's motions and pleadings.

17. On September 13, 2010, State Court ruled in favor of Creditor, ordering Debtor to pay the amount of $3,130 within five (5) days, and if Debtor does not comply the court shall order his arrest.

18. On September 20, 2010, Creditor filed this bankruptcy petition as emergency petition because "Debtor has an Order for incarceration issued by the Tribunal of First Instance of the Commonwealth of Puerto Rico, Family Relations Court of the Judicial Region of Bayamón", relating "to alimony owed to his ex-spouse in the amount of $3,130.00". (Docket 4)

19. Debtor had already deposited $1,500 in state court, thus the actual amount owed was $1,630, but he chose to pay $2,000 in attorney's fees to file this petition, which make no sense, since domestic support obligations are non-dischargeable, thus he will still be obligated to pay his ex-spouse's alimony and all other domestic support obligations determined and ordered by state court.

20. Section 1325(a) (8), 11 U.S.C. Section 1325(a) (8), requires that debtor pays "all amounts that are required to be paid under a domestic support obligation and that first become payable after the date of the filing of the petition if the debtor is required by a judicial or administrative order, or by statue, to pay such domestic support obligation".

4

21. Debtor has a state court ordered domestic support obligation, as defined by 11 U.S.C. 101(14) (A), to provide a health insurance coverage for his former spouse and his minor child.

22. In January 2011, the debtor unilaterally change Creditor's medical insurance coverage cancelling Creditor's prescription drug coverage in complete disregard for her health and state court's established domestic support obligations, thus currently Creditor Salgado Ojeda has not been able to afford any prescription drugs necessary for her safety and wellbeing. A health insurance company letter, Triple –S Salud, certifying the insurance policy cancelation as of January 1, 2011, is attached.

23. Creditor was forced to paid her medical insurance premiums for the month of February, since Debtor did not paid them as required as part of his domestic support obligations, and he has not made any alimony payments for the month of February.

24. Therefore, Debtor has not paid his domestic support obligations as they become payable, as required by Section 1325 (a) (8), 11 U.S.C. Section 1325 (a) (8), precluding Debtor's plan from confirmation; and his plan would not be able to be confirmed until Debtor provides his former spouse and child the proper health insurance coverage with prescription drug coverage as established and ordered by state court as domestic support obligations.

25. Thus, while Debtor briefly enjoys the protection of the bankruptcy court his ex-spouse and his son have to struggle to survive, pray for their health and hope that the Debtor complies with his Chapter 13 Plan. Briefly, because is inevitable that Debtor will default in his Chapter 13 Plan and his domestic support obligations, forcing Creditor to

request again for the dismissal of the present case. Why wait? Why request that Creditor incurs in additional costs and suffering to request this case's dismissal?

26. Debtor's default on domestic support obligations and his intentions to evade them are the main reason for filing this bankruptcy, which drives us to Creditor's second objection to debtor's plan confirmation since it is proposed lacking any good faith on his behalf.

27. In determining if a petition has been filed lacking any good faith on behalf of the debtor, or in other words, that the bankruptcy case has been filed in bad faith, the Honorable Court would have to consider the totality of the circumstances test to make its determination.

28. *"In applying the totality of the circumstances test to determine whether a Chapter 13 petition has been filed in bad faith, bankruptcy courts generally consider the following factors: (1) the debtor's accuracy is stating her debts and expenses: (2) the debtor's honesty in the bankruptcy process, including whether he or she has attempted to mislead the court and whether he or she has made any misrepresentations, (3) whether the Bankruptcy Code is being unfairly manipulated, (4) the type of debt sought to be discharged, (5) whether the debt would be discharged in a Chapter 7, and (6) the debtor's motivation and sincerity in seeking Chapter 13 relief."* **Luis R. González – Ruiz, et als, v. Doral Financial Corporation**, 341 B. R. 371; 2006 Bankr. LEXIS 693 (2006).

29. The Debtor has not been accurate stating his debts and obligations, since he has made numerous amendments to his filed schedules to correct or included basic information such as:

a. To correct and include, in Schedule F and in the mailing matrix creditor María Concepción Cestero, his cousin, who has filed a debt collection claim in State Court in the amount of $45,000, in which Creditor is also a defendant. (Docket 6) We must ask the debtor, How often a person forgets a debt of $45,000, where there is a default judgment against you in favor of your cousin? With whom you celebrated and sang at a party in her house during the past Christmas holydays? and;

b. To correct his residency address, where he stated his former spouse's address instead of his current address, where he has been living for more than four years. (Docket 28) Debtor suddenly forgot that he move out of his this particular residence four years ago; and now lives in Carolina not in Guaynabo? Debtor suddenly forgot his good friend who has let him live in his apartment rent free for the past 4 years?

c. To include an inheritance interest over the deceased father's realty in Schedule B. (Docket 29)

d. As recent as March 2, 2011, Debtor amended Schedule F, to include Civil Case No. GDP 2008-0219, which is a personal injury and malpractice case where plaintiffs are claiming $600,000 in damages, according to Commonwealth of Puerto Rico Judicial Branch Information System. Again, is customary for the Debtor to forget a $600,000 malpractice claim from 2008? (Docket 44)

30. Furthermore, on January 18, 2011, state court[3] held a child support revision hearing to determine any necessary changes to Debtor's son child support since child support obligations were determined more than 2 years ago.

31. As part of said January 18, 2011, hearing, Debtor was required to fill and file under penalty of perjury a Personal and Economic Information Form (Planilla de Información Personal y Económinca (PIPE)) stating his income, expenses, assets and obligations. (See attached PIPE Form.) In the form Debtor stated under penalty of perjury the following:

   a. Section II. Economic Situation:
      i. A. Income: Gross Salary (Earnings) $5,600 and a Net Pay of $4,560.
      ii. B. Medical Insurance Coverage $400.00
      iii. C. Assets: Investments (securities, bond, etc.); Medicoop Shares 3,000.

32. Debtor has proposed two plans in the present case that the US Trustee has determined not to recommend for confirmation for a number of reasons, particularly that the plan is insufficiently funded; and has filed a Motion to dismiss the present cases that has been reaffirmed. (Dockets 22, 25, 30, 31 and 41)

33. Debtor has stated in his petition's Schedule I that his monthly income was $7,200 as of October 4, 2010 (Docket 16), on November 17, 2010, he amended Schedule I still informing an income of $7,200 (Docket 21), and on December 10, 2010 he amended Schedule I still informing an income of $7,200 (Docket 29).

---

[3] Commonwealth of Puerto Rico's Tribunal of First Instance, Family Relations Courts of Bayamón Judicial Region, Civil Case No. D DI2006-1999, (4005).

34. In December 10, 2010, Debtor amended his plan increasing his payment schedule amounts up to monthly payments in the amount of $950, and surrendering Medicoop shares as set-off mortgage arrears. (Docket 26)

35. Debtor has unfairly used the bankruptcy code as part of his alimony and child support reduction planning and strategy, believing that he can modify state court's child support and alimony orders as he deems fit, without any hearing, approval or consequences.

36. Debtor also believes that he can provide any information or amount income or any other amount concerning his finances without any consequences.

37. According to Debtor's multiple Schedule I, he has a monthly income of $7,200; and according to his PIPE Form, he has a monthly income of $5,600, $1,600 less than his Schedule I monthly income.

38. Debtor has even provided inconsistent information, or false information, regarding his income to this Honorable Court confirming US Trustee's allegations of an insufficiently funded plan; or he has provided false information to state court in his PIPE Form.

39. Therefore, we are force to ask Debtor, did he submitted false information in his Schedules I, concerning his income in the amount of $7,200, in violation of 28 U.S.C. Sections 151, *et seq.*?; or He provided false information regarding his income in the PIPE Form, in violation of Puerto Rico Penal Code, Article 225? Did Debtor committed perjury in either court?

40. Either way Debtor answers, he will be caught, the documents speak for themselves, since he allegedly has sufficient income to propose a Chapter 13 Payment

Plan, and he has lower income, for the same period of time, for his son's child support determination.

41. Creditor encourages the Honorable Court to request or hear Debtor's testimony of said child support hearing of January 18, 2011.

42. Creditor is not convinced that these differences are errors; these are intentional acts, as part of Debtor's refusal to pay any amounts as domestic support obligations.

43. Furthermore, in February 24, 20011, Debtor through his state court attorney filed a motion in state court[4] as part of his son's child support revision, claiming that his son homestead was worth $500,000, and not the $330,000 listed on Schedule C where Debtor has a $165,000 interest instead of the now claimed $250,000 interest. What is the true value of the homestead $330,000 or $500,000?

44. Has Debtor wore the emperor's new clothes for his family, and his old attires for these bankruptcy proceedings? Apparently so!

45. Therefore, Debtor's actions and Plan are proposed with lack of good faith, accuracy and honesty; and the Debtor unlawful actions to unilaterally amend or modify his domestic support obligations he sees fit without any court's approval or hearing proves Debtor's true intentions to file this case.

46. As a result of Debtor's intentional actions and omissions, he should be barred from filing any petitions for one year pursuant to 11 U.S.C. Section 109 (g) (1).

**WHEREFORE,** for the reasons stated above it is respectfully requested from Court to enter an order not confirming the debtor's Chapter 13 Payment Plan pursuant to 11 U.S.C. Sections 1325 (a) (3) and 1325 (a) (8), enter an order dismissing the present

---

[4] Commonwealth of Puerto Rico's Tribunal of First Instance, Family Relations Courts of Bayamón Judicial Region, Civil Case No. D DI2006-1999, (4005).

case pursuant to 11 U.S.C. Section1307 (c) (11); and/or enter an order barring Debtor from filing any bankruptcy petitions for the period of one year.

**CERTIFICATE OF SERVICE:** I hereby certify that on this same day, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send notification of such filing to the Bankruptcy Trustee, the attorney for the debtor and all participants of CM/ECF system.

San Juan, Puerto Rico, this 6th day of March, 2011.

**s./ Luis Francisco Zayas Marxuach**
**USDC-PR No. 221013**
Zayas- Mayo Law Offices, P.S.C.
PO Box 363462
San Juan, PR 00936-3462
Phone: (787) 929-3311
Fax: (787) 200-4566
E-mail: zayasmayolaw@gmail.com